IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vladimir Garcia Soza,<br><br>  Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>  Respondents. | No. CV 12-0596-TUC-CKJ (JR)<br><br>**REPORT AND RECOMMENDATION** |

  Pending before the Court is Petitioner Vladimir Garcia Soza's Amended Petition Under 28 U.S.C. § 2254 For A Writ of Habeas Corpus By A Person In State Custody (Non-Death Penalty) (Doc. 4). Respondents have filed an Answer (Doc. 9) and Petitioner has filed a Reply (Doc. 16).[1] In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for a report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after its independent review of the record, deny and dismiss the Petition with prejudice.

---

[1] Petitioner filed his original Petition, Amended Petition and Reply in a pro se capacity. On July 19, 2013, attorney Brick P. Storts, III, filed a notice of appearance on behalf of Petitioner. (Doc. 18).

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On or about October 1, 2009, Petitioner was convicted in Pima County Superior Court of first degree murder. (Doc. 4 at 1-2). The charge stemmed from Petitioner's alleged shooting of the victim outside a Tucson nightclub around 3:00 a.m. on September 17, 2006. (Doc. 4, Attachment (Att.) C, *State v. Soza*, No. 2 CA-CR-2009-0394, Memorandum Decision (Mem. Dec.) (Ariz. App. Dec. 22, 2010) at 2) (*Soza II*)).[2] Petitioner, wearing a white tank top, allegedly called out the victim's nickname and said "this is for Raul" before shooting. (*Id.*) A video camera at the club recorded a man wearing a similar white shirt following the victim into the parking lot. (*Id.*) Some years prior to the shooting, the victim had received a favorable plea agreement for his testimony against two co-defendants, one of whom was Raul Maldonado. (*Id.* at 3). An employee at the club identified Petitioner, who was a regular customer, as the shooter in the video. (*Id.*) The trial court sentenced Petitioner to natural life in prison. (*Id.*).

Petitioner appealed his conviction and raised the following issues:

(1)     the trial court erred by ruling admissible evidence of a "snitch poem" Petitioner had written;

(2)     the trial court erred by denying Petitioner's motion for mistrial made after a detective referred to Petitioner's police interview;

(3)     the trial court erred by ordering Petitioner to disclose his investigator's timeline; and

(4)     the trial court erred by precluding Petitioner's proffered character evidence.

(Doc. 4, Att. A, *State v. Soza*, No. 2 CA-CR-2009-0394, Appellant's Opening Brief (Op. Br.) at 1). The Arizona Court of Appeals affirmed Petitioner's conviction on December 22, 2010. (Doc. 4, Att. C, *Soza II*). Petitioner requested review of that decision regarding the

---

[2] Petitioner previously was convicted on this same charge of first degree murder but his conviction was reversed and the matter remanded for a new trial by the Arizona Court of Appeals on October 3, 2008. (Doc. 9, Ex. A, *State v. Soza*, No. 2 CA-CR 2007-0383 (Mem. Dec. Oct. 3, 2008) (*Soza I*)).

1 admissibility of the poem and disclosure of the timeline. (Doc. 4, Att. D, Petition (Pet.) For
2 Review). The Arizona Supreme Court denied review on May 31, 2011. (Doc. 4, Att. E,
3 *State v. Soza*, No. CR-11-003-PR). The court of appeals mandate issued on August 10, 2011.
4 (Doc. 4, Att. F, No. 2 CA-CR 2009-0394, Mandate).

5 On June 8, 2011, Petitioner filed a Notice of Intent to File Post-Conviction Relief
6 (PCR). (Doc. 9, Ex. D, First PCR Notice). Petitioner requested appointed counsel and
7 indicated he would raise a sentencing issue but he did not identify the specific grounds. (*Id*.)
8 The trial court ordered Petitioner to provide the factual and legal bases for his post-
9 conviction petition. (Doc. 9, Ex. E, 06/09/2011 Order). On July 13, 2011, Petitioner's
10 appointed counsel, who had been defense counsel, moved to withdraw and to dismiss the
11 post-conviction proceedings without prejudice claiming the issue of sentencing was not a
12 viable issue but that Petitioner might claim ineffective assistance of counsel. (Doc. 9, Ex.
13 F, Motion to Withdraw). On July 13, 2011, the trial court granted the motion to withdraw
14 but did not rule on the motion to dismiss. (Doc. 9, Ex. G, 07/13/2011 Order).

15 On August 25, 2011, Petitioner pro se filed a second Notice of Intent to File Post-
16 Conviction Relief, alleging that newly discovered evidence cast doubt on his conviction but
17 he did not identify the evidence.   (Doc. 9, Ex. H, Second PCR Notice). The trial court
18 ordered Petitioner to provide additional information by September 23, 2011. (Doc. 9, Ex.
19 I, 08/26/2011 Order). On October 12, 2011, the trial court dismissed the post-conviction
20 proceedings because Petitioner had not complied with the order to provide additional
21 information. (Doc. 9, Ex. J, 10/12/2011 Order). On November 17, 2011, the trial court
22 reinstated the post-conviction proceedings based on Petitioner's assertion in a motion that
23 he had not received a copy of the court's order directing the filing of additional information.
24 (Doc. 9, Ex. K, Motion to Vacate Order & Ex. L, Order reinstating PCR proceedings). The
25 court set January 3, 2012 as the deadline for Petitioner to provide the information. (Doc. 9,
26 Ex. L, 11/17/2011 Order). Petitioner failed to comply with the court's order and deadline
27 and on January 31, 2012, the trial court dismissed the post-conviction proceedings. (Doc.
28

9, Ex. M, 01/31/2012 Order). Neither the trial court nor the Arizona Court of Appeals have records showing that Petitioner sought review of that dismissal decision.

Petitioner provided the Petition for Writ of Habeas Corpus to prison authorities for mailing on August 2, 2012. (Doc. 1 at 11). In his amended federal habeas petition, Petitioner asserts the following two grounds for relief:

(1) Ground One: Petitioner was denied his Fifth Amendment rights to due process and a fair trial based on the trial court's ruling admitting the "snitch poem" into evidence; and

(2) Ground Two: Petitioner was denied his Fifth Amendment rights to due process and against self-incrimination when the trial court denied his motion for a mistrial based on a detective's testimony mentioning an interview of Petitioner that indicated that Petitioner exercised his right to remain silent.

(Doc. 4 at 6-7).

## II.  LEGAL DISCUSSION

Respondents argue that Ground One regarding the admission of the poem is properly exhausted but should be denied on the merits. (Doc. 9 at 8, 10, 15-17). Respondents argue that Ground Two should be dismissed because it is unexhausted and Petitioner has not demonstrated circumstances to overcome the procedural default. (*Id*. at 9).[3] Respondents do not contend that Petitioner's federal habeas petition was not timely filed and thus concede the issue of timeliness.

---

[3] Petitioner asserted four grounds for relief in his original federal habeas petition but asserted only two grounds for relief in his amended federal habeas petition. (Doc. 1 at 6-9; Doc. 4 at 6-7). Respondents in their Answer addressed the four grounds Petitioner asserted in the original petition. Petitioner makes clear in his Reply that he has raised only two issues in his Amended Petition. (Doc. 16 at 2). Petitioner's Ground One asserted in the original habeas petition is the same as Ground One asserted in the Amended Petition and concerns the alleged due process violation in the admission of the poem. Petitioner's Ground Two asserted in the Amended Petition was asserted as Ground Three in the original Petition and concerns the alleged due process violation based on the detective's testimony. Respondents' argument as set forth in their Answer addressing Ground Three applies to Ground Two as asserted in the Amended Petition.

- 4 -

## A. Ground One: Merits Analysis

### 1. Legal Standards

Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 529 U.S. 362 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Custer v. Hill*, 378 F.3d 968, 971 (9th Cir. 2004). In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002).

### 2. Application

Petitioner asserts in Ground One a due process violation based on the admission of a poem during trial. The state trial court ruled admissible the State's evidence that Petitioner had written the following poem:

> a snitch is a snitch and a rat is a rat
> they give three to go free or some shit like that
> They'd rather tell on their friends than go to the joint so they
> talk to the cops and in court they will point
> They're weak and they're scary[;] I guess that's why they squeal
> I hope all of the snitches will some day feel steel
> They cry like a bitch, "I can't do no time[,]"

- 5 -

>       but if that is the case, then why do the crime[?]
>       ["]no one will know, ["] I'm sure they must think
>       but we always find out if some one's a fink
>       it's gotten so bad[,] you never know who you can trust
>       I love to see rats gettin ['] stomped in the dust.
>       it almost always turns out to be a so-called friend
>       I guess time will tell all and we'll see who is what in the end
>       In my mind it's crazy and I don't understand why
>       how can they look in a mirror or hold their head high [?]
>       ["]I'm sorry!["] they yell when they are about to get hurt
>       but the only good snitch is six feet under dirt.

(Doc. 4, Att. C, *Soza II* at 3-4, n.1). The poem was in a folder of Petitioner's papers and drawings found in his room. (*Id.* at 3). The trial court admitted the poem finding that its probative value outweighed its prejudicial effect. (*Id.* at 4). Petitioner argued on appeal that the trial court's ruling contravened the court of appeals' ruling in the prior appeal, that there was no evidence that Petitioner knew or had any contact with Raul Maldonado, and that he was deprived of due process and a fair trial. (Doc. 4, Att. A, Op. Br. at 5-9). In rejecting Petitioner's argument, the Arizona Court of Appeals found that in the prior appeal it had determined it unnecessary to decide the issue of the poem's admissibility and that the facts and circumstances presented in the first trial were different from those presented in the second trial. (Doc. 4, Att. C, *Soza II* at 4-5). The court of appeals concluded that the evidence was properly admitted under Arizona law as demonstrating that Petitioner harbored animosity toward "snitches" and showed evidence of motive:

> Soza contends the poem should have been excluded because apart from the sentence, 'This is for Raul,' there was no evidence Soza knew or had any contact with Raul Maldonado. The record demonstrates, however, that in addition to the gunman's statement immediately before shooting L., additional evidence was presented that L. previously had testified against Maldonado in exchange for a favorable plea deal and that L. recently had been released from prison. Thus, we agree with the state that '[e]vidence demonstrating that [Soza] harbored animosity toward "snitches," introduced at his trial for killing a "snitch," [wa]s properly admissible as evidence of motive.' *See State v. Hargrave*, 225 Ariz. 1, ¶ 14, 234 P.3d 569, 576 (2010) ("[M]otive is relevant in a murder prosecution."), *cert. denied*, __U.S.__, 131 S.Ct. 317 (2010); *see also State v. Greene*, 192 Ariz. 431, ¶¶ 20-23, 967 P.2d 106, 112-13 (1998) (letters written by defendant relevant evidence tying defendant to murder). Consequently, the trial court did not abuse its discretion in allowing the admission of the poem, regardless of whether any evidence directly linked Soza and Maldonado.

1 (*Id.* at 5-6). The state court of appeals decision is the last reasoned decision on the issue.

2 Petitioner's argument in his amended habeas petition is similar to the argument he
3 made to the state court of appeals. Petitioner contends that "there was no evidence that this
4 was a shooting because Petitioner thought the victim was a snitch." (Doc. 4 at 6).

5 Petitioner has not demonstrated a violation of his constitutional rights as a result of
6 the state court's ruling. There was video evidence of the shooting and a club employee
7 identified Petitioner as the shooter in the video. At the time of the shooting, Petitioner stated,
8 "this is for Raul." There was evidence that the victim had cooperated with authorities and
9 testified against Raul Maldonado. Petitioner has not disputed these factual circumstances as
10 found by the state court. Based on this evidence, the jury could infer that the victim was shot
11 because he was a "snitch." Petitioner's poem evidencing animosity toward "snitches"
12 arguably was relevant to show motive. Federal courts on habeas review have found no due
13 process violation in the admission of evidence to prove a specific issue in dispute such as
14 motive. *See*, *e.g.*, *Windham v. Merkle*, 163 F.3d 1092, 1103-04 (9th Cir. 1998).

15 Even if the evidence was irrelevant or prejudicial, "'federal habeas corpus relief does
16 not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). "[I]t is not the
17 province of a federal habeas court to reexamine state-court determinations on state-law
18 questions." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991). The issue for the federal habeas
19 court "'is whether the state proceedings satisfied due process.'" *Holley v. Yarborough,* 568
20 F.3d 1091, 1101 (9th Cir. 2009) (*quoting Jammal v. Van de Kamp,* 926 F.2d 918, 919-920
21 (9th Cir. 1991)). A state trial court's admission of evidence under state evidentiary law will
22 form the basis for federal habeas relief only where the evidentiary ruling "so fatally infected
23 the proceedings as to render them fundamentally unfair" in violation of the petitioner's due
24 process rights. *Jammal,* 926 F.2d at 919. "[F]ailure to comply with the state's rules of
25 evidence is neither a necessary nor a sufficient basis for granting habeas relief." *Id.*

26 The U.S. Supreme Court has "defined the category of infractions that violate
27 'fundamental fairness' very narrowly," *Dowling v. United States,* 493 U.S. 342, 352 (1990),
28 and "made very few rulings regarding the admission of evidence as a violation of due

1 process." *Holley,* 568 F.3d at 1101. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such 'clearly established Federal law,' we cannot conclude that the state court's ruling was an 'unreasonable application'" *Id. (citing Carey v. Musladin,* 549 U.S. 70, 77 (2006)).

Petitioner's claim that admission of the poem was unfairly prejudicial is foreclosed. There is no clearly established federal law "ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley,* 568 F.3d at 1101. The state court's ruling was not contrary to, or an "unreasonable application" of, clearly established Federal law. *Id.* Ground One fails on the merits.

**B.     Ground Two:  Exhaustion and Procedural Default**

**1.     Legal Standards**

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. 28 U.S.C. § 2254(b)(1)(A); *Weaver v. Thompson*, 197 F.3d 359, 364-65 (9th Cir. 1999). "[A] prisoner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon those claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claim to the Arizona Court of Appeals. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

1    Additionally, a state prisoner must not only present the claims to the proper court, but
2 must also present them fairly.  A claim has been "fairly presented" if the petitioner has
3 described the operative facts and federal legal theories on which the claim is based.  *Picard*
4 *v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995).
5 "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal
6 claims in state court unless he specifically indicated to that court that those claims were based
7 on federal law."  *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other
8 grounds, 247 F.3d 904 (9th Cir. 2001).  A petitioner must alert the state court to the specific
9 federal constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249
10 F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad constitutional
11 principles, such as due process, equal protection, and the right to a fair trial, are insufficient
12 to establish fair presentation of a federal constitutional claim.  *Lyons*, 232 F.3d at 669.

13    It is not enough that a petitioner presented to the state court all the facts necessary to
14 support an inadequately identified federal claim or that a "somewhat similar" state law claim
15 was raised.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Shumway v. Payne*, 223 F.3d 982, 988
16 (9th Cir. 2000) (mere similarity between a claim of state and federal error insufficient to
17 establish exhaustion).  "Exhaustion demands more than drive-by citation, detached from any
18 articulation of an underlying federal legal theory."  *Castillo v. McFadden*, 399 F.3d 993,
19 1003 (9th Cir. 2005).

20    **2.    Application**

21    Petitioner contends in Ground Two that he was denied a fair trial based on a
22 detective's testimony implicating his right to remain silent.  During trial, when asked whether
23 photographs of Petitioner's tattoos had been taken at the time of Petitioner's arrest, the
24 detective testified that "the photographs 'were taken, I believe, shortly after the interview.'"
25 (Doc. 4, Att. C, *Soza II* at 6).  Petitioner's motion for mistrial claiming that the reference to
26 "interview" was an indirect comment on his right to remain silent was denied.  (*Id*.)
27 Petitioner raised the issue on direct appeal, framing it as "The Trial Court Erred When It
28 Denied Appellant's Motion For Mistrial Following A Detective's Mention Of An Interview

- 9 -

1 Of The Defendant." (Doc. 4, Att. A, Op. Br. at 9). Petitioner's argument contained two references to federal law. Petitioner argued, "As stated in [*State v. Gilfillan*, 196 Ariz. 396, 998 P.2d 1069 (App. 2000)], ' ... a defendant's due process is violated when a witness introduces a statement at trial that the defendant asserted his right to remain silent.' *Gilfillan*, ¶ 37 citing *Doyle v. Ohio*, 426 U.S. 610, 617 (1976)." (*Id*. at 10-11). Petitioner also argued that the detective's testimony "alerted the jury to a matter not properly before them, and was a violation of [Petitioner's] right against self incrimination under the Fifth Amendment to the U.S. Constitution, and Article 2, § 10 of the Arizona Constitution." (*Id*. at 11). The state appeals court found that the detective's off-hand statement was not a comment on Petitioner's right to remain silent, that the prosecutor did not draw attention to Petitioner's interview, and that Petitioner's motion for a mistrial was properly denied. (Doc. 4, Att. C, *Soza II* at 6-7).

Here, Petitioner framed the issue in the state court of appeals as based on the denial of his request for a mistrial under state law. Petitioner argued that the detective's statement drew attention to the fact that Petitioner had talked to the police but that no such statement was placed in evidence before the jury. (Doc. 4, Att. A, Op. Br. at 9). Petitioner contended that "the jury may well have implied, which was the case, that [Petitioner] invoked his right against self incrimination." (*Id*.) However, the detective did not testify that Petitioner invoked his right to remain silent. In this context, Petitioner's passing references in his argument to broad constitutional principles including his right to remain silent and violation of his due process and Fifth Amendment rights did not alert the state court that he was raising a federal constitutional claim. To the extent that Petitioner's Ground Two asserted in his amended habeas petition presents a federal question, Petitioner did not "fairly present" his claim in a manner that would have sufficiently alerted the Arizona Court of Appeals to the federal nature of his claim. Petitioner did not exhaust Ground Two in the Arizona state courts.

Any attempt by Petitioner to return to state court to present Ground Two would be futile. The time has passed to seek post-conviction relief in state court under Ariz.R.Crim.P.

1  32.4(a) and Petitioner has not shown any of the exceptions to the time limits under Rule
2  32.1(d), (e), (f), (g) or (h) apply to him. Petitioner's Ground Two has been procedurally
3  defaulted.

4        A federal court may not consider the merits of a procedurally defaulted claim unless
5  the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish
6  that a miscarriage of justice would result from the lack of review. *Schlup v. Delo*, 513 U.S.
7  298, 321 (1995). To establish cause, a petitioner must point to some objective factor external
8  to the defense that impeded his efforts to comply with the state's procedural rules. *Dretke
9  v. Haley*, 541 U.S. 386, 392-94 (2004). To establish prejudice, the prisoner must show that
10 the alleged constitutional violation "worked to his actual and substantial disadvantage,
11 infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456
12 U.S. 152, 170 (1982). A fundamental miscarriage of justice exists when a constitutional
13 violation resulted in the conviction of one who is actually innocent. *Schlup*, 513 U.S. at 327.

14       Petitioner makes no claim of "cause and prejudice" or "fundamental miscarriage of
15 justice" in his Reply.   (Doc. 16). Rather, Petitioner reargues the merits of Ground Two.
16 Petitioner has not established "cause" for the procedural default or resulting prejudice. He
17 does not contend he is actually innocent and has not shown a miscarriage of justice.
18 Petitioner has not demonstrated circumstances to overcome the procedural default.

19       Alternatively, although Respondents did not address the merits of Ground Two in their
20 Answer, the claim appears to be without merit. Petitioner contends in his amended habeas
21 petition that the detective's testimony called attention to a police interview and the jury could
22 infer that Petitioner invoked his right to remain silent because no statement was admitted at
23 trial. The Supreme Court in *Doyle* held that "the use for impeachment purposes of [a]
24 petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violated the
25 Due Process Clause of the Fourth Amendment." *Doyle*, 426 U.S. at 619. Here, the detective
26 made only a brief passing reference to Petitioner's interview. The detective's testimony did
27 not inform the jury about the circumstances of the interview or that Petitioner terminated the
28 interview upon invoking his right to remain silent. The prosecutor's question did not call for

a discussion of the interview and there is no indication that the State made further mention of the matter. Under these circumstances, the state court's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent. Ground Two is denied and dismissed.

### III.     RECOMMENDATION

Based on the foregoing, the Magistrate Judge RECOMMENDS that the District Court, after its independent review, deny Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See*, 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Replies shall not be filed without first obtaining leave to do so from the District Court. If any objections are filed, this action should be designated case number: **CV 12-0596-TUC-CKJ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en Banc).

DATED this 16th day of June, 2014.

Jacqueline M. Rateau
United States Magistrate Judge